HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NOEL A SALDANA AND JESSICA SALDANA, husband and wife and their marital community,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LAKEWOOD, a municipal corporation, and JAMES SYLER, in his official capacity and individual capacity and JANE DOE SYLER, and their marital community,<br><br>Defendants. | CASE NO. C11-6066 RBL<br><br>ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>[Dkt. #51] |

## I.  Introduction

THIS MATTER is before the Court on Defendants' Motion for Partial Summary Judgment [Dkt. #51]. Defendants seek an order dismissing Plaintiffs'[1] *Monell* claims against the City of Lakewood, and determining that Officer James Syler is entitled to qualified immunity. Defendants argue that Saldana's *Monell* claim fails because he cannot demonstrate that Lakewood

---

[1] Plaintiffs are Noel and Jessica Saldana. Noel's injuries form the basis for all of their claims. They are referenced as "Saldana" for clarity in this Order.

ORDER ON DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

was deliberately indifferent to the dog handling officer's violations of Saldana's constitutional rights. Defendants claim that Officer Syler is entitled to qualified immunity because he acted reasonably in deploying Astor, and that his actions were "reasonable, but mistaken, at worst." [Dkt. #51, Mot. at 20].

The facts of this case have been described in detail in the Court's previous orders, and do not bear repeating here. Numerous issues of material fact remain in this case. Because there are factual disputes as to whether Lakewood's dog handling and review policies (or lack thereof) amount to deliberate indifference of the constitutional rights of suspects, the Defendants' Motion as to the *Monell* claims is DENIED. In addition, because there are factual disputes surrounding Astor's contact with Saldana, Defendants' Motion for qualified immunity is similarly DENIED.

## II.   Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment

should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1221.

### B. *Monell* Liability

In order to establish a claim against Lakewood under 42 U.S.C. § 1983, Saldana must show that he was deprived of his constitutional rights and that this deprivation was proximately caused by a Lakewood policy, custom, or practice that amounts to deliberate indifference. *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690-91 (1978).

More specifically, municipal liability can be established through: (1) conduct pursuant to an expressly adopted official policy or a longstanding custom which constitutes the standard operating procedure of the local government entity; (2) a decision of a decision-making official who was a final policy-making authority whose edicts or acts may fairly be said to represent official policy in the area of the decision; and (3) an official with final policymaking authority either delegating that authority to, or ratifying the decision of the subordinate. *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). After proving that one of these circumstances existed, a plaintiff must also show that the municipality's action was the cause of the constitutional deprivation. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

In his Response, Saldana focuses his *Monell* claims on four distinct theories, each of which allegedly shows that Lakewood had a policy or custom that, if not unconstitutional as written, resulted in constitutional violations. These theories are: (1) Lakewood's pattern of misuse of police dogs; (2) Lakewood's lack of oversight within its K-9 unit; (3) Lakewood's policy (or lack thereof) that allows the use of dogs to track and potentially maim suspects even

though the suspects are intoxicated and not suspected of serious crimes; and (4) Lakewood's lack of training within its K-9 unit.

Defendants argue that Saldana has failed to provide evidence that could prove that any of these theories amounted to an official policy or custom, and that, at any rate, none of the theories *caused* Saldana's alleged constitutional deprivation.

Saldana's first two theories focus on the fact the Astor has maimed four individuals with slashing injuries in the last four years, and that Lakewood does not have a system of oversight in place to properly evaluate such uses of force to determine whether any corrective action is needed. They argue that: (1) Lakewood was on notice as to Astor's history of inflicting excessive slashing injuries, and its failure to remedy the problem amounts to deliberate indifference of suspects' rights; and (2) Lakewood's failure to adequately oversee and review dog bites within the unit amounts to deliberate indifference of suspects' rights. Moreover, he argues that the lack of policies did cause his injuries, because Lakewood has failed to correctively train or retire Astor, and because it has continued to give handlers exclusive discretion to deploy K-9s trained in the bite-and-hold method, when it knew the dogs could inflict great bodily injury on suspects they come in contact with.

While Defendants argue that none of Astor's previous inflictions of slashing injuries were found to be a constitutional violation and that Astor's incidents were sporadic (over the course of four years), a jury could reasonably find that Astor's history, and Lakewood's failure to take corrective action in light of such history, gives rise to a custom from which the current constitutional violation stems. A jury could find that, because it was on notice that its K-9 unit could cause constitutional violations but it failed to change the program, Lakewood has chosen "the functional equivalent of a decision by the city itself to violate the Constitution." *Canton v.*

*Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part and dissenting in part). Even if Astor's other injuries did not amount to constitutional violations, the injuries in those cases were the same type of slashing injuries at issue here. This is contrary to Lakewood policy of using the 'bite and hold' technique, which should result in puncture wounds only. [Dkt. #56, Ex. 6 at 13]. Whether Astor's use of force was reasonable, and whether Lakewood Police Department custom allowed this type of force, are questions for the jury.

In addition, a jury could find that Lakewood's policy regarding the review of dog bite incidents is so flawed that it amounts to deliberate indifference of suspects' constitutional rights. Defendants argue that Lakewood already tracks every single dog bite that occurs and evaluates it to determine disciplinary action and/or whether further training is needed. [Dkt. #59, Reply at 6]. While it is true that each individual force report is reviewed, it is not clear from the evidence that such reports give sufficient meaningful insight into whether the dog handling teams are acting beyond constitutional limits. A jury could find that Lakewood's review policy is so deficient that it amounts to deliberate indifference to the rights of suspects. *See Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (holding that a jury could find that a plaintiff's dog bite injury was caused by the city's failure to engage in oversight of its K-9 program).

For these reasons, summary judgment is not appropriate, and Defendants' motion as to the *Monell* claims is DENIED. Because the other *Monell* theories arise out of the same facts, the Court need not discuss them here. All of Saldana's *Monell* theories can be fully developed at trial.

**C. Qualified Immunity**

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

1  violate clearly established statutory or constitutional rights of which a reasonable person would

2  have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is to

3  "protect officers from the sometimes 'hazy border' between excessive and acceptable force."

4  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206

5  (2001)). A two-part test resolves claims of qualified immunity by determining whether plaintiffs

6  have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right

7  at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v.

8  Callahan*, 553 U.S. 223, 232 (2009).

9        Qualified immunity protects officials "who act in ways they reasonably believe to be

10  lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*,

11  483 U.S. at 631). The reasonableness inquiry is objective, evaluating 'whether the officers'

12  actions are 'objectively reasonable' in light of the facts and circumstances confronting them,

13  without regard to their underlying intent or motivation." *Huff v. City of Burbank*, 632 F.3d 539,

14  549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if the officer's

15  decision is constitutionally deficient, qualified immunity shields her from suit if her

16  misapprehension about the law applicable to the circumstances was reasonable. *Brosseau v.

17  Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity "gives ample room for mistaken

18  judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224 (1991).

19        For the purposes of this motion, Syler argues that, even if the Court finds a constitutional

20  violation, he is nevertheless entitled to qualified immunity because his decision to deploy Astor

21  and to allow Astor to contact Saldana was, at worst, "mistaken." [Dkt. #51, Mot. at 20]. He argues

22  that he reasonably relied on the information provided by dispatch, Mrs. Saldana, and his fellow

23  officers at the time of the incident. Together, these sources told him that Saldana kicked down

24

his wife's door and was therefore suspected of felony residential burglary. They informed him that Saldana was potentially a danger to the community and to the officers. Syler argues that, under these circumstances, even if his decision to deploy Astor was wrong, it was a reasonable mistake. Thus, he claims, he is entitled to qualified immunity.

Saldana argues that Syler's decision to deploy Astor and to allow Astor to bite him was wholly unreasonable under *Graham v. Connor,* 490 U.S. 386 (1989). The *Graham* test determines the reasonableness of an officer's actions by weighing the severity of the crime with whether the suspect poses an immediate threat to officers or others and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. Saldana first contends that it was unreasonable for Syler to deploy Astor based solely on the information provided to him by his fellow officers, without first conducting his own investigation into the situation. Saldana also argues that it was unreasonable for Syler to allow Astor to bite him, because there is no evidence that he was resisting arrest or even fleeing from police, and there is no evidence whatsoever that he posed a threat to the officers or others.

The parties' stories diverge wildly about the circumstances under which Astor actually bit Saldana's leg. Viewed in the light most favorable to Saladana, the evidence does not support the conclusion that Syler's use of force was, at worst, "reasonable but mistaken." Saldana contends that he was laying on the ground, in the open, when Astor bit into his leg. [Dkt. #54, Resp. at 7]. Then, he contends that Syler told Astor to "Get him, boy." [*Id.* at 8]. The resulting injury to his leg was extensive. Under these facts, any reasonable officer would have known this use of force to be excessive under *Graham* and that he is not qualifiedly immune from suit. Therefore, Syler is not entitled to qualified immunity as a matter of law. Defendants' motion on this issue is DENIED.

### III. Conclusion

Defendants' Motion for Partial Summary Judgment as to the *Monell* claims against the City of Lakewood is DENIED. Defendants' Motion as to Officer Syler's qualified immunity is DENIED.

IT IS SO ORDERED.

Dated this 25th day of October, 2013.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE